# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| AMANDA D. RUGGLES,<br>PLAINTIFF<br><br>VS.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>DEFENDANT | CASE NO. 1:07CV957<br>(BARRETT, J.)<br>(HOGAN, M.J.) |

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Supplemental Security Income in September, 2004. Her application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained two hearings before an Administrative Law Judge (ALJ) in July and September, 2006 at Portsmouth, Ohio. Plaintiff testified as did Vocational Expert (VE), Robert Breslin. Plaintiff was unrepresented at the hearings The ALJ reached an unfavorable decision in October, 2006, following which Plaintiff processed an appeal to the Appeals Council. After the Appeals Council refused review in September, 2007, Plaintiff timely filed her Complaint with this Court.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred by failing to afford proper weight to the report of Dr. Cheri Lindberg, Plaintiff's treating psychiatrist. The second statement of error faults the ALJ for a failure to make a fair record when Plaintiff was unrepresented and proceeding pro se. The third error alleged was the ALJ's failure to afford proper credibility to Plaintiff.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she lives in a mobile home in Wheelersburg, Ohio with her seven-

year-old son, who is deaf and autistic, and infant daughter. She has sole custody of her daughter, but shared custody of her son. She testified that she gets a total of $637.00 per month in benefits for her children, but is supported by her father. She attended school through the eleventh grade, but possesses a GED. She testified that she is right-handed, 5'8" and 130 lbs. When asked whether or not she could work, Plaintiff responded as follows:

> "I've got really, really bad nerves and I have seizures and when my nerves get really bad, they just get uncontrollable. They're controlled right now by medicine, but they're still bad and it throws me into seizures and I have real bad anxiety attacks. It just feels like my skin is jumping out of my body... I get really bad migraines."

Plaintiff testified that she has seen Dr. Lindberg for two years and related that her last appointment was two weeks ago. She also sees therapist Jan Oliver at Shawnee Mental Health and has seen Dr. Provaznik, her primary care physician, for seizures and migraines and Dr. White for a thyroid problem. Her headaches "come and go." but are "not that bad now."

Plaintiff testified that Dr. Provaznik prescribed Topomax for seizures, the last of which occurred approximately one month ago. Plaintiff testified that she suffered a worse seizure about six months ago and was rendered unconscious. She bites her tongue, but has not experienced any form of incontinence. Dr. Lindberg has prescribed Lexapro, which she is to take three times per day. She also takes Synthroid for her thyroid problem and Seroquel for sleep. She testified that she is "doing good" on her medications, but that her panic attacks are unpredictable.

She admitted to being hospitalized in a psychiatric facility approximately two years previous and at a time when she was pregnant. During her past employment as a waitress, she tended to forget things and than have difficulty with supervisors. She reported a present inability to concentrate and remember. Plaintiff reported being able to care for her daughter, drive an automobile, take care of her personal hygiene, shop for groceries and keep her mobile home clean. She reported being able to visit with her parents and six siblings and being able to take her son to school and baseball practice.

Plaintiff reported enjoying watching preachers on television and attending a "megachurch" in Columbus, Ohio approximately twice per month. She enjoys singing and writing movie scripts. Plaintiff also testified that she hears voices telling her to harm herself, but she would not because "my kids are my world." (Transcript, Pgs. 302-334).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE three hypothetical questions. The first and the one ultimately accepted, assumed the accuracy of Dr. Lindberg's report. The VE responded that there would be a representative number of unskilled light jobs available. The second assumed the accuracy of the mental residual functional capacity assessment performed by Dr. Semmelman. The VE indicated that the same number of unskilled light jobs would be available. The third hypothetical asked the VE to assume the accuracy of Plaintiff's testimony. The VE indicated that if Plaintiff's testimony were fully credible, she would be unemployable.

## THE MEDICAL RECORD

Plaintiff saw Hong Kang, M.D., a psychiatrist, in July, 2002 for racing thoughts, insomnia, mood swings, obsessive thoughts and repetitive behavior. The history indicated that Plaintiff had suffered with ADHD as a child and had been hospitalized at Bellefonte Hospital. She had been prescribed Ritalin and Adderall. Dr. Kang diagnosed her with bipolar disorder and prescribed Seroquel and Topamax. Dr. Kang also saw Plaintiff on an earlier date in July, 2002, at which time he observed that Plaintiff's speech was "coherent and relevant." Her "memory and intellectual functioning seemed intact" and her "judgment and insight were unimpaired." (Tr. 107-109).

The discharge summary from Our Lady of Bellefonte Hospital in Ashland, Kentucky showed that Plaintiff was hospitalized there for a 5-day period in September, 2004. The history indicated that she had a long history of depression. She was anxious, not sleeping and hearing voices. She was put on a suicide watch and prescribed Lexapro and Seroquel. The diagnosis was major depression. A GAF of 32 was assigned. The treatment plan included stabilization with antidepressants and antipsychotics, detoxification from alcohol and psychotherapy. (Tr. 111-

3

114).

Plaintiff was seen at the Southern Ohio Medical Center in Portsmouth, Ohio in November, 2004 for a seizure disorder. A CT scan of the head was done and it was normal. An electroencephalogram was also performed and it demonstrated a "normal awake and drowsy recording. There were no focal or paroxysmal epileptiform abnormalities." (Tr. 153-154).

Patricia Semmelman, Ph.D., reported in March, 2005 that Plaintiff's mood is "stable" and her mood swings have "decreased." Plaintiff reported "doing better" with her medications, but she continued to report auditory hallucinations. The medication was helping her sleep better. Her concentration and attention are "somewhat impaired," while her social skills are "mildly impaired." (Tr. 214). Dr. Semmelman completed a psychiatric residual functional capacity assessment in September, 2005. She diagnosed Plaintiff with major depressive disorder with psychotic features in remission. She had a mild limitation in the category called "restriction of activities of daily living" and in the category called "difficulty in maintaining social function." She has a moderate limitation in the category called "difficulties in maintaining concentration, persistence or pace." There have been one or two episodes of decompensation, each of extended duration.

Dr. Semmelman found no significant limitations in any category of "Understanding and Memory," but she found moderate limitations of Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods and work in coordination with or proximity to others without being distracted by them. She also found moderate limitations of Plaintiff's ability to complete a normal workweek without interruptions from psychologically-based symptoms, to interact with the public and to respond appropriately to changes in the work setting. Dr. Semmelman noted that Plaintiff has a history of alcohol abuse, but that she is able to function as a mother and homemaker. Her mood has been stabilized and her thyroid problems could account for some of her mood swings. (Tr. 215-231).

George White, M.D., was consulted by Plaintiff in April, 2005 for a thyroid problem, which Dr. White described aa a "thyroid nodule." Dr. White said that the nodule was benign and opined that it produced no symptoms. (Tr. 248-249).

There are records from David Provaznik, D.O., an osteopath and Plaintiff's primary care

4

physician. Dr. Provaznik diagnosed Plaintiff with "schizophrenia with questionable seizures" and prescribed Topamax for mood stabilization and Maxalt for her migraines. She has hypothyroidism, suffers from severe depression and has suicidal ideation. (Tr. 232-246).

Records from Shawnee Mental Health Clinic in Portsmouth, Ohio indicate that when Plaintiff feels depressed, she feels worthless, useless, ugly, hears voices and is preoccupied with religious topics. She has poor ability to concentrate and remember and has low frustration tolerance. She perceives other people as being jealous and mean to her. These records are dated in December, 2004 and were authored by therapist, Janice Oliver. (Tr. 253-261).

A physical residual functional capacity assessment was done by someone, but the assessment is both undated and unsigned. For what it is worth, the only restriction or limitation listed is the obvious, a restriction from climbing ladders, ropes and scaffolds, based on Plaintiff's previously-diagnosed seizure disorder. (Tr. 262-269).

Cheri Lindberg, M.D., a psychiatrist, reported in July, 2006 that she has treated Plaintiff since October, 2004. She was treated with antidepressants, antipsychotics, mood stabilizers and a thyroid medication. She is compliant with her medications and currently takes Lexapro and Seroquel. She was diagnosed with a bipolar disorder and was being monitored for part-partem psychosis, since bipolar patients are at a higher risk for the development of post-partem psychosis. She has two children and lives alone. (Tr. 270).

In November, 2005, Plaintiff complained to Dr. Provaznik about neck pain. He found her neck to be supple and to have good range of motion. A cervical x-ray was ordered and Ultraset was prescribed for pain. The x-ray was negative. (Tr. 278-280).

Dr. Lindberg completed a mental residual functional capacity ("RFC") assessment in July, 2006. Dr. Lindberg rated Plaintiff's restrictions in a number of areas. She rated as "slight" Plaintiff's limitation of her ability to understand, remember and carry out simple instructions. She rated as "moderate" Plaintiff's limitations relative to understanding and remembering complex instructions and her ability to make judgments on simple work-related decisions. She rated as "marked" Plaintiff's limitation of her ability to carry out detailed instructions. Dr. Lindberg rated as "moderate" Plaintiff's limitations in interacting appropriately with the public, supervisors and co-workers and also in responding appropriately to changes in a routine work

5

setting. Her limitation in the area of responding appropriately to work pressures was rated as "marked." In June, 2006, Dr. Lindberg indicated that Plaintiff was "doing well on current medications." She was described as "coping, alert, oriented, cooperative and pleasant." Her affect was "broad and appropriate" and her mood was "euthymic." There was no mania, psychosis or complaints of pain. "She is not judged suicidal or homicidal." (Tr. 284-287).

During the period from October, 2004 to October, 2005, treatment notes from Dr. Lindberg and therapist Patty Sparks show an attempt to balance Plaintiff's medications to her satisfaction. Prescriptions for Seroquel were given for Plaintiff's auditory hallucinations and Wellbutrin for depression. The prescription for Seroquel was reduced after Plaintiff complained of weight gain. Abilify was substituted for Seroquel in November, 2004. Dr. Lindberg refused to supply Plaintiff with Adderall, although there is some indication that Plaintiff obtained Adderall from her twin sister. In December, 2004, Strattera was substituted for Abilify. In February, 2005, Topamax was prescribed because Plaintiff attributed her nightmares to Abilify. In October, 2005, Plaintiff was described as "alert, oriented, cooperative." Dr. Lindberg related that there was "no evidence of pressured speech, psychosis or mania." (Tr. 289-299)

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff has a bipolar disorder with psychotic features and that disorder was severe. The ALJ found that Plaintiff's report of a seizure disorder was not established by the record. The ALJ found that Plaintiff retained the residual functional capacity for a full range of work "except for limitations described by Dr. Lindberg" in her evaluation of July 24, 2006.

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial

6

evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*,

667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990);

8

*Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-

9

like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4)and 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1520a(c).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise cannot supplant the medical expert. *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir. 1963);

*Lachey v. Secretary of H.H.S.,* 508 F. Supp. 726, 730 (S.D. Ohio 1981).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler,* 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan,* 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.,* 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.,* 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher,* 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17

F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Plaintiff's first Statement of Error raises two issues with respect to Dr. Lindberg's report that Plaintiff asserts were either misinterpreted or ignored by the ALJ. The first concerns Dr. Lindberg's opinion that Plaintiff's ability to respond to work pressures in a usual work setting was "marked," which means "seriously" or "severely limited, but not precluded." In order to understand Dr. Lindberg's opinion, one must review both the more serious and less serious limitations as described on the form upon which Dr. Lindberg wrote her opinion. An "extreme" limitation means "no useful ability to function." A "moderate" limitation means that there is more than a mild limitation, but the individual is still able to function satisfactorily. The second path to understanding Dr. Lindberg's view is to look at her narrative explanation for the category she chose as well as her narrative explanation regarding other deficiencies listed. Dr. Lindberg's comments have to be taken in context. Dr. Lindberg's narrative comments say that Plaintiff has attention deficit disorder, which results in some inability to remember and carry out instructions, especially detailed instructions. Plaintiff's inability to remember results in some form of confrontation with superiors. The confrontation results in stress, which Plaintiff handles by quitting or withdrawing if she is not fired.

Dr. Lindberg's comments are very similar to Plaintiff's own report that she worked as a restaurant server during five separate periods from 1998 to 2002, that none lasted more than five months and that her employment stopped because "I was having trouble getting along with co-workers" and "I always have difficulty with co-workers," and "I have difficulty with the public - l get stressed out." (Tr. 67).

Plaintiff's problem in raising this question of the proper interpretation to be put on Dr. Lindberg's opinion is that the ALJ accepted Dr. Lindberg's opinion. Moreover, the VE's opinion that, despite Plaintiff's limitations as described by Dr. Lindberg, Plaintiff can perform various

12

jobs at the light exertional level, such as cleaner, inspector and assembler, assumed the accuracy of the ALJ's residual functional capacity assessment. The jobs selected by the VE do not require the level of personal communication that a waitress must have, nor do they involve climbing on ladders, ropes or scaffolding, the latter of which would not be a good idea if Plaintiff were to have a seizure disorder.

The second twist relative to Plaintiff's First Statement of Error is that the ALJ ignored Dr. Lindberg's written narrative. This is a conclusion without any support in the record. The ALJ's first hypothetical question asked the VE to assume the accuracy of Dr. Lindberg's report, not to pick and chose what the VE found to his liking. The VE based his opinion that jobs were available to Plaintiff on Dr. Lindberg's report as he was instructed to do. There was no error as alleged in Plaintiff's first Statement of Error.

The second Statement of Error is critical of the ALJ for his alleged failure to develop the record for an unrepresented Plaintiff. We disagree that the ALJ was deficient in developing the record. First, the ALJ advised Plaintiff that he would continue the case if Plaintiff wished to consult an attorney. The ALJ provided a form for Plaintiff to take to Dr. Provaznik in order to admit his office notes. In addition to many questions put to Plaintiff, the ALJ asked: "Why do you feel unable to work at this time outside the home?" and "Anybody else you're seeing that we haven't talked about?" and "Any additional problems that you didn't name last time?" and "Any other medications I haven't mentioned." The ALJ further inquired, "Any other problems we haven't discussed so far?" and "Is there anything else you want to tell me? Is there anything I didn't ask you about?" The records were obtained from all the medical providers Plaintiff saw in any significant way. The ALJ's conduct of the hearings reflected a concern for thoroughness and fairness. His development of the record was hardly insufficient.

The last Statement of Error asserts that the ALJ assessment of Plaintiff's credibility was erroneous. Again, we disagree. However, Plaintiff calls to our attention that the ALJ's statement that "There is no third-party corroboration of claimant's allegations" is erroneous. Plaintiff's criticism is legitimate because Drs. Kang, Semmelman and Provaznik corroborate to a certain degree Plaintiff's testimony, as do therapists Oliver and Sparks. However, it is significant that Plaintiff is able to function as a mother of a special needs child and as a homemaker and her

ability to function as a mother is not only on "good days" because a demanding youngster does not consider his mother's immediate state of mind, nor do his needs correspond to a normal forty-hour work week. Plaintiff is able to drive, shop, clean her mobile home, take care of her own hygienic needs as well as those of her children and she has interests in singing and writing.

Although Plaintiff's credibility was considered, one can't get past the fact that Plaintiff's own treating psychiatrist's assessment was accepted and followed. Thus, any credibility considerations played a very minimal part in the final decision in this case. What the ALJ is really communicating is that Plaintiff's own statement of why she couldn't work was not an adequate substitute for the limitations assessed by Dr. Lindberg, a professional, and as Plaintiff's treating psychiatrist, one very unlikely to exaggerate in favor of the Social Security Administration.

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of the this Court.

November 12, 2008

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF
## OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\HOGANTS\ruggles2.wpd